UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **WILLIAM A. PORTER, JR.** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-00585 |
| | ) Judge Sharp |
| **PROGRESSIVE DIRECTIONS, INC.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This is a retaliatory discharge case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, in which Plaintiff William A. Porter, Jr. claims he was fired from his employment at Defendant Progressive Directions, Inc. ("PDI") because he previously filed a charge of discrimination. PDI has filed a Motion for Summary Judgment (Docket No. 12), to which Plaintiff has responded (Docket No. 17), and PDI has replied (Docket No. 22). PDI has also filed a Motion to Strike the Affidavit of Jon Bray ("Bray") (Docket No. 22), prompting Plaintiff to file a motion seeking leave to file a substitute Affidavit in its place (Docket No. 25). The Court will allow Plaintiff to substitute Bray's Affidavit, and deny PDI's motions.

## I. FACTUAL BACKGROUND

The factual allegations before the Court are sparse. According to PDI's Statement of Facts and Plaintiff's responses thereto (Docket Nos. 14 & 18), and as amplified only slightly in Plaintiff's Amended Complaint and Equal Employment Opportunity Commission ("EEOC") charges, the facts are as follows:

PDI is a not-for-profit organization which employs over 300 staff members. It provides services to approximately 1,000 intellectually disabled individuals in Montgomery and Stewart

1

counties who receive funding through Tennessee's Division of Mental Retardation Services. PDI is required to comply with certain rules and regulations promulgated by the state in relation to intellectually disabled individuals.

Plaintiff began working for PDI on March 10, 2006, as a "residential specialist," and in that job helped care for intellectually disabled clients. Plaintiff's job duties apparently included transporting PDI's clients by van to various places.

On May 8, 2008, Plaintiff filed an EEOC charge alleging sex discrimination and retaliation. According to the charge, Plaintiff claimed he was treated differently from female employees because he was forced to do the job of two people – operate the van and watch the clients. He also claimed that, after complaining about this treatment, he was falsely accused of driving on a client's grass, being at a shopping mall with a client, and allowing a client to disappear from sight, all of which led to his termination on May 28, 2008. The parties successfully mediated the charge, and Plaintiff was reinstated to his former position at PDI on July 1, 2008.

After his return to work, Plaintiff received four Disciplinary Notices over the next six and one-half months. On November 10, 2008, Plaintiff received a Disciplinary Notice because he allegedly threatened a PDI client on October 29, 2008, by calling her a "snitch," and asking her why she always tattled on the "blacks," but never on "white people." Plaintiff signed the Disciplinary Notice, but claims the event never occurred.

Four days later, on November 14, 2008, Plaintiff was given another Disciplinary Notice which was the result of Plaintiff allegedly telling a co-worker that one of the supervisors was a "house ni--ger." Plaintiff refused to sign that Disciplinary Notice, and claims he made no such statement.

Less than two week later, on November 26, 2008, Plaintiff was given a third Disciplinary Notice. Plaintiff was suspended without pay from November 17 to 24, 2008, because he allegedly

threatened a co-worker (who was afraid to come back to work), and sexually harassed another co-worker by allegedly telling her he "was gonna bend her over and stick it to her." Again Plaintiff signed the Notice, but claims those events never happened.

Finally, on January 13, 2009, Plaintiff drove a company van to a store in order to fill a personal prescription. At the time, an intellectually disabled individual was in the van. PDI claims the client was left in the van while Plaintiff went into the store. When PDI learned of this on January 19, 2009, Plaintiff was given another Disciplinary Notice and his employment was terminated. Plaintiff refused to sign the Disciplinary Notice and, while he concedes he went to fill a prescription, he claims he did so by utilizing the drive-thru.

## II. MOTION TO STRIKE AND MOTION TO SUBSTITUTE

PDI moves to strike Bray's Affidavit because it allegedly was submitted in violation of an Order issued by Magistrate Judge Griffin. PDI also requests that it be awarded attorney's fees for having to make the motion.

On January 18, 2011, Judge Griffin entered an Order allowing Plaintiff until February 18, 2011, to file a response to PDI's Motion for Summary Judgment, and giving PDI until March 4, 2011, within which to file a reply. The Order also provided that "[n]o other filings in support or in opposition to the defendant's pending motion for summary judgment shall be made except with the express permission of" the Court. (Docket No. 16 at 1).

In accordance with the Order, Plaintiff filed his response on February 18, 2011, along with an Affidavit from Bray. Bray's Affidavit, however, was unsigned and not notarized. When PDI pointed out those omissions in its reply, Plaintiff filed a Notice on March 9, 2011, attempting to substitute the defective Affidavit with the same Affidavit notarized and signed by Bray. This led PDI to file the pending Motion to Strike, which was followed by Plaintiff's Motion to Substitute.

Under these circumstances, Plaintiff's filing is technically not an "other filing" as contemplated by the Order because it adds nothing new, other than a signature and notarization. Besides, striking the Affidavit and imposing attorney's fees would be a draconian sanction, particularly since motions to strike are disfavored, Lopez v. Metro. Gov't. of Nashville, 2008 WL 913085 at *3 (M.D. Tenn. 2008), and the Court does not rely on Bray's Affidavit in formulating its ruling on PDI's Motion for Summary Judgment. The Motion to Strike will be denied, and Plaintiff's Motion to Substitute will be granted.

### III. **MOTION FOR SUMMARY JUDGMENT**

The standards governing motions for summary judgment are well-known and need not be repeated in detail. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

As noted at the outset, Plaintiff's sole claim is that he was discharged in retaliation for having previously pursued an EEOC charge. PDI contends that Plaintiff's prior charge had nothing to do with his termination. Rather, Plaintiff was terminated because he engaged in numerous instances of misconduct for which he received Disciplinary Notices, and each of those instances was sufficient to terminate Plaintiff's employment.

Prior to reaching the merits of Plaintiff's retaliation claim, the Court briefly addresses the

arguments raised in PDI's reply brief regarding the alleged insufficiency of the Affidavits submitted by Plaintiff. In opposition to PDI's Motion for Summary Judgment, Plaintiff submitted his own Affidavit, as well as Affidavits from Mark Rutherford ("Rutherford"), Chilita Jeffrey ("Jeffrey"), and Bray.

PDI objects to each of these Affidavits. Its objections to Jeffrey's and Bray's Affidavits are well-taken to the extent that those Affidavits are wholly conclusory, and, therefore, the Court does not consider them in ruling on PDI's Motion for Summary Judgment.

PDI also argues that Plaintiff's and Rutherford's Affidavits should be not be considered because neither "recites that it is of the affiant's personal knowledge" and the Affidavits contain hearsay. (Docket No. 22 at 6). However, both Plaintiff's and Rutherford's Affidavits are submitted "under the penalty of perjury," both begin with the averment that "the following information is true and correct to the best of [the affiant's] knowledge, information, and belief" and both are replete with personal observations. (Docket Nos. 19-1 at 1 & 19-2 at 1). While each contains some statements which may constitute hearsay, the Court relies only on their personal observations in ruling on the Motion for Summary Judgment.

Turning to the merits, where there is no direct evidence, retaliation claims are reviewed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) framework. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003). "To make a prima facie showing of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action." Harris v. Metro. Gov't of Nashville & Davidson County, 594 F.3d 476, 485 (6th Cir. 2010). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one that is easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

5

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate non-discriminatory reason for its action. Abbott, 348 F.3d at 542. "If the defendant meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." Id.

In this case, there is no dispute that Plaintiff has established the first three elements of a *prima facie* case. He engaged in a protected activity by filing an EEOC charge, PDI was aware of that protected activity since it rehired him after mediation, and Plaintiff subsequently suffered the ultimate adverse employment action – termination. What is disputed is whether PDI had a legitimate reason for discharging Plaintiff and, if so, whether that reason was but a pretext for discrimination.

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Id.

PDI correctly argues that the eight month gap between Plaintiff's filing of an EEOC charge and his termination is insufficient, by itself, to establish a causal connection between the two events. See, Clay v. United Parcel Serv., Inc., 501 F.3d 695, 718 (6th Cir. 2007) (without more, six months between protected activity and adverse action too attenuated to show causation). However, Plaintiff has forwarded other evidence from which a jury could conclude that there was a causal link between

6

his protected activity and his termination.

When the facts are construed in Plaintiff's favor as they must be for present purposes, they show that within months of his return to work, Plaintiff began receiving what he claims were baseless Disciplinary Notices. The inference from this is that he was being singled out, and increased scrutiny can be considered in the causation equation. Hamilton v. Gen. Elec. Co., 556 F.3d 428, 436 (6th Cir. 2009).

Further, less than five months after returning to work, Plaintiff was suspended without pay. Even though he was later paid for that time, the suspension constituted an adverse employment action for purposes of Title VII, Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004). This temporal proximity is sufficient to show causation, since Plaintiff's burden at this point is not onerous, see, Lamer v. Metaldyne Co., LLC, 240 Fed. Appx. 22, 30 (6th Cir. 2007) (five month period "could lead a reasonable jury to conclude that a causal connection existed between [plaintiff's] protected activity and his firing"), and since Plaintiff claims he did not engage in any of the conduct of which he was accused. See, Hudson v. Norris, 227 F.3d 1047, 1052 (8th Cir. 2000) (evidence that an employer's explanation for employment decision is unworthy of credence "does double duty for a plaintiff: It tends to show a causal link between the protected conduct and the adverse action, and it also tends to show that the justification given by a defendant was pretextual").

The foregoing, of course, presupposes that Plaintiff's version of events (or non-events) is true. Plaintiff's version is supported by his own Affidavit in which he specifically avers that he did not threaten a client, did not refer to a supervisor in a pejorative way, and did not threaten one co-worker and sexually harass another. As for the last incident, Plaintiff denies leaving the van to fill the prescription and claims that PDI van drivers commonly utilize the drive-thru at McDonald's and Wendy's restaurants. This last averment is supported by Rutherford, a co-worker.

7

In his Affidavit, Rutherford states that he was with Plaintiff in the van, and that Plaintiff did not leave the van, but instead used the drive-thru which took no more than twenty seconds. Rutherford also states that "staff goes through drive throughs all the time," "no one has been fired for that," and, to his knowledge, never even written up for that alleged transgression. (Docket No. 19-2 at ¶ 4).

For its part, the only evidence PDI has submitted in support of its Motion for Summary Judgment is the Affidavit of Jay Albertia ("Albertia"), PDI's Executive Director. In his Affidavit, Albertia states that Plaintiff committed each of the acts charged, that each incident violated "PDI company policy," and that Plaintiff signed the Disciplinary Notices for two of the events. As for the last incident, Albertia states that Plaintiff conducted personal business while on company time which is a violation of PDI policy, and that he left a PDI client unattended which is a violation of "State regulations."

Notwithstanding the diametrically different version of events presented by the Affidavits, PDI argues that summary judgment is appropriate because it has set forth legitimate reasons for its decision to terminate Plaintiff and Plaintiff has not shown those reasons to be pretextual. In this vein, PDI argues that "by signing the Disciplinary Notices dated November 10 and November 26, 2008, Plaintiff admits that he threatened a mentally challenged individual in Plaintiff's care," and "that he threatened one co-worker to the extent that the co-worker was afraid to come back to work, and then sexually harassed another co-worker when he stated to her 'he was gonna bend her over and stick it to her.'" (Docket No. 13 at 7). PDI argues that because "Plaintiff had a choice to sign or not to sign the Disciplinary Notices" and because Plaintiff chose to sign those two Notices, he has "admit[ted] to his wrongdoing which is the direct and proximate cause of his termination." (Id.).

The Court is unpersuaded by this argument. PDI has not made the Disciplinary Notices a part of the summary judgment record. Upon independent review of the *entire* record, the Court found

unauthenticated copies attached to PDI's Answer. Even though the Court is not obligated to consider those Notices,[1] the Court has done so, and they do not indicate that an employee's signature constitutes an admission of guilt.

Nor has PDI presented the court with its "policies," which conceivably might shed some light on the disciplinary process or, at a minimum, identify the policies that Plaintiff is alleged to have violated. Without such evidence, the Court has no way of knowing whether "threatening" a client by calling him or her a tattletale is sufficient grounds for termination, although one might think that the incident was not too egregious since Plaintiff was not fired at that time. No doubt, threatening a co-worker and sexually harassing another is a terminable offense, but Plaintiff claims (and PDI offers no evidence to the contrary) he was told that, if the charges were unsubstantiated, he would be reinstated with back pay, which he was.

PDI also argues that "Plaintiff admits that he drove a company van to a store in order to fill a personal prescription while an intellectually disabled individual in Plaintiff's care was in the van" and that "[s]uch behavior violates **State regulations**." (Docket No. 22 at 1, bold in original). This argument, and PDI's citation to Albertia's Affidavit as support for the proposition, raises more questions than it answers, not the least of which are, (1) what state regulations are applicable; and (2) what do those regulations say? Presumably, the regulations prohibit leaving intellectually disabled individuals unattended, but probably do not address going through drive-thrus. It could be that PDI's policy addresses the use of company vans to run personal errands, but, again, the Court has no way of knowing what the policy says.

---

[1] Under Rule 56(c)(1), it is incumbent upon the movant to cite to particular parts of the record which supports its position, and, under Rule 56(c)(3), the Court is not required to consider anything other than such properly cited material.

Finally, PDI argues that it "reasonably relied on particularized facts" that Plaintiff violated its policies and that "[u]nder Sixth Circuit law, so long as a decision maker had an honest belief in the proffered reason, a plaintiff cannot establish that the reason was pretextual simply because it is ultimately proven to be untrue." (Docket No. 13 at 7-8). However, to avail itself of the modified honest belief rule adopted by the Sixth Circuit, PDI "must be able to establish its reasonable reliance on the particularized facts before it at the time the decision was made." Wright v. Murray Guard, Inc., 455 U.S. 702, 708 (6th Cir. 2006). "The key injury in assessing whether an employer holds such an honest belief is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." Michael v. Caterpillar Finan. Serv. Corp., 496 F.3d 584, 598-99 (6th Cir. 2007) (citation omitted).

This Court is not in a position to determine if PDI is entitled to the deference afforded a decision which is honestly made. All that is before the Court is Albertia's Affidavit which is nothing more than a *post hoc* recounting of "facts" which purportedly justified Plaintiff's termination. In his Affidavit, Albertia flatly claims, without elaboration, that Plaintiff committed each of the actions for which he received a Disciplinary Notice, and states that the decision to terminate him was based upon those events. However, there is no indication of who made the termination decision, what information that person relied upon, which event(s) was (or were) the basis for the termination, what investigation may or may not have been taken with respect to any of the incidents, who may have witnessed the incidents or complained about them, and what Plaintiff or others may have said about the incidents at the time. Without even a suggestion of how the decision was made, the Court cannot determine whether PDI's decision to terminate Plaintiff was reasonably informed. See, Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 415 (6th Cir. 2008) (invocation of honest belief rule inappropriate where there was "a question as to how reasonable and thorough the inquiry had been");

Goller v. Ohio Dept. of Rehab. and Corr., 285 Fed. Appx. 250, 258 (6th Cir. 2008) (honest belief rule not appropriate where employer "could not reasonably assume the factual veracity of" report of plaintiff's alleged wrongdoing).

Because the only evidence before the Court are conflicting Affidavits, this is the quintessential "he said, he said" case. Such cases are not susceptible to summary resolution, and PDI's Motion for Summary Judgment will be denied. See, Fincher v. Depository Trust and Clearing Corp. 604 F.3d 712, 726 (2nd Cir. 2010)("court cannot . . . take a side at the summary judgment stage" where there "is a question of 'he said, she said'"); Russell v. Bd. of Trustees of Univ. of Illinois, 243 F.3d 336, 339 (7th Cir. 2001) ("summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute").

## IV. **CONCLUSION**

On the basis of the foregoing, PDI's Motion for Summary Judgment and its Motion to Strike will be denied. Plaintiff's Motion to File Substitute Affidavit will be granted.

*Kevin H. Sharp*
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE